[No. 2760–3. Division Three.    January 25, 1979.]

THE STATE OF WASHINGTON, *Appellant,* v. GREGORY L. McCREA, ET AL, *Respondents.*

*Donald C. Brockett, Prosecuting Attorney,* and *Terence M. Ryan,* for appellant.

*Richard L. Cease, Public Defender, Richard W. Sanger, Assistant,* and *Kenneth Watts,* for respondents.

ROE, J.—Three federal agents were properly in the defendants' premises pursuant to a valid warrant authorizing them to search for "a machine gun and parts thereof which are being possessed in violation of Title 26 U.S.C. 5681(d)." They found the gun and certain parts, but they naturally continued to search through the entire house for possible other parts. While searching inside a record cabinet, they discovered suspected controlled substances. At this point, city police officers were called to view the controlled substances. Under 18 U.S.C. § 3105 (1969):

> A search warrant may in all cases be served by any of the officers mentioned in its direction or by an officer authorized by law to serve such warrant, but by no other person, except in aid of the officer on his requiring it, he being present and acting in its execution.

Thus, there would have been nothing unusual or illegal if the federal agents called the city police for assistance in executing the warrant. But the above statute does not control the disposition of this case because the officers were not called, as the trial court found, to assist in executing the warrant. The search had been nearly completed, and no assistance was needed by the federal officers. It was only after the evidence named in the warrant had been gathered

that the federal officers came upon the controlled substances. Controlled substances were not mentioned in or sought by the federal search warrant.

This is not a case where the federal agents seized the controlled substances which then might have been used in any possible violation of federal statutes. As they did not have *immediate* knowledge that the substances were contraband, the federal officers failed to satisfy the requirements of plain view.[1] Nor is this a case where federal officers legally seize evidence and later give it to the state officers for prosecution. Rather, two city officers arrived in response to a telephone call, entered the house without a warrant and viewed the substances which they then had cause to believe were contraband. Based on such actions, a search warrant was obtained and executed, resulting in seizure of the controlled substances. Suppression was granted by the trial court, and its order is the basis of this appeal.

██ The Fourth Amendment does not prohibit all searches but only unreasonable ones. Unless warrantless searches fall within one of the exceptions, such as plain view, they are per se unreasonable. *State v. Smith,* 88 Wn.2d 127, 559 P.2d 970 (1977). In *Marshall v. United States,* 422 F.2d 185 (5th Cir. 1970), the rationale of plain view is explained that where contraband is in view, the substantive crime of possession is committed in the presence of the officer and, in fact, no search is being conducted within the meaning of the Fourth Amendment. Under plain view there must be (1) a prior justification for the intrusion, (2) an inadvertent discovery of incriminating evidence, and (3) immediate knowledge by the police that they have evidence before them. *Coolidge v. New Hampshire,*

---

[1]Excerpt from cross-examination of Agent Goodman:

"Q What was the purpose, as far as you were concerned, in calling the Spokane Police Department?

"A The substances—the bottles, the capsules that I found indicated that they could be controlled substances, but I could not be positive of it one way or the other, and we needed assistance to make a determination if they were controlled substances."

403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971). The prior justification for the intrusion by the officer arises only when he has a right to be in a position to have that view. It is unnecessary to indicate all of the instances when that might arise. One may be when the officer is lawfully on the premises with permission, or pursuant to a search warrant, or to assist other officers in execution of the warrant. We find no justification for the warrantless initial intrusion by the city officers here. The officers were not on the premises with permission, pursuant to a warrant, nor were they there to assist the federal agents in the execution of their warrant. There was no exigency. The place was secure with federal officers present. Detective Browning and Sergeant Morris were told that they were being asked to come to the house to view controlled substances, and they testified that that was why they went there.[2] They did not go there to look for a machine gun or parts.

■ Had the federal agents been considered as observers or informants lawfully on the premises of the defendants, their information could have been the basis of a search warrant, but that was not the procedure followed. "Search"

---

[2] Excerpt from cross–examination of Sergeant Morris:

"Q And you knew what you were looking for before you went in the house; isn't that correct?

". . .

"A No. I didn't know what was in the house.

"Q Well, the agents told you that there was what they believed to be controlled substances—

"A Right.

"Q —before you went in the house?

"A Oh, yeah, I believed there was controlled substances in the house.

"Q That's what you went in there to look at?

"A Uh–huh.

"Q You didn't go in there to look for a machine gun, did you?

"A No.

"Q And you were advised also that the Federal Search Warrant authorized the agent to search for a machine gun—

"A —and parts.

"Q —and parts thereof?

"A yes."

is defined in Black's Law Dictionary 1518 (4th ed. rev. 1968), as follows:

An examination of a man's house or other buildings or premises, or of his person, with a view to the discovery of contraband or illicit or stolen property, or some evidence of guilt to be used in the prosecution of a criminal action for some crime or offense with which he is charged.

This definition implies a search into something which is not in open view. The controlled substances in the record cabinet were not in open view to the public. We hold that the observation by the city officers inside the premises was clearly a search. Since their entry was not warranted and had no other legal justification, the evidence seized resulting therefrom must be suppressed. Support for this position is found in *State v. Bean,* 89 Wn.2d 467, 572 P.2d 1102 (1978). In that case the officers were not lawfully on the premises, having entered without a warrant but finding controlled substances therein. No doubt they had probable cause to believe such substances were there. But in affirming suppression, the court stated on page 473:

In suppressing the evidence seized prior to the securing of a search warrant, the trial court necessarily found by implication that no sufficient exigent circumstances in this case justified the warrantless entry of the residence. We are in complete agreement with the trial court's statements, but we go further to hold that the trial court's failure to suppress evidence which was obtained from the house after the search warrant was served, was error. The initial entry into the house was wrongful and the subsequently obtained search warrant was not curative of the original illegal entry.

The judgment of suppression is affirmed.

GREEN, C.J., and MUNSON, J., concur.